Affirmed and Opinion filed March 22,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00740-CV



Mark C.
Rumscheidt, Appellant 

v.

Betty A.
Rumscheidt, Appellee 



On Appeal from
the 246th District Court

Harris County, Texas

Trial Court
Cause No. 2008-62098



 

OPINION

            Appellant
Mark C. Rumscheidt appeals the trial court’s denial of his petition to modify
the child support he was originally ordered to pay under the terms of a
Nebraska divorce decree.  Mark contends the trial court abused its discretion
in denying his petition because there was a material and substantial change in
his circumstances, he was not voluntarily underemployed, and the amount of
support ordered exceeds the Texas guideline amount.  Mark also contends the
trial court erred by failing to make findings of fact and conclusions of law requested
under Texas Rules of Civil Procedure 296 and 297.  We hold that the trial court
erred in failing to file the requested findings of fact and conclusions of law,
but Mark suffered no harm as a result.  We also hold that the trial court did
not abuse its discretion in refusing to modify Mark’s child-support
obligation.  We therefore affirm.

I

            On
January 5, 2006, Mark and Betty Rumscheidt were divorced in Nebraska.  They had
two children.  At the time of the divorce, Mark was working in the restaurant
industry and making about $72,000 per year.  Betty and the children moved to
Houston, while Mark remained in Nebraska.  In April 2008, Mark moved to
Houston.  Later that year, Betty filed a notice of registration of foreign
support order in Harris County.  Mark filed a petition to modify the
parent-child relationship and a counterclaim on other issues not relevant here.

            In
the summer of 2009, the trial court held a hearing on the parties’ claims,
including the issue of reducing Mark’s child-support obligation.  Both parties testified
and submitted financial-information statements.  Mark testified that in June
2008 he got a job in Houston as a bank teller at Bank of America at a salary of
$18,000 per year, and his current salary was $25,400.  Mark also testified that
his parents subsidized his livelihood.  Mark explained that he no longer wanted
to work in the restaurant industry because it required him to work long hours
on nights and weekends, and he wanted to be able to spend more time with his
children.

            After
hearing testimony from both Mark and Betty, the trial court denied Mark’s
petition to modify child support.  Mark moved for reconsideration, but after a
hearing the trial court overruled his motion and signed an order denying Mark’s
petition.

            On
appeal, Mark raises the following issues:  (1) the trial court erred in denying
his request for findings of fact and conclusions of law; (2) the trial court
abused its discretion in denying his petition to modify as there was a material
and substantial change in circumstances; (3) the trial court abused its
discretion in denying his petition to modify as he was not voluntarily
unemployed; and (4) the trial court abused its discretion in denying his
petition to modify as his child support obligation exceeded the Texas guideline
amount for support based on his income at the time of the divorce.

II

            In
his first issue, Mark contends the trial court erred in denying his request for
findings of fact and conclusions of law under Texas Rules of Civil Procedure
296 and 297.  Rule 296 provides that in any case tried in a district or county
court without a jury, any party may request the court to state in writing its
findings of fact and conclusions of law.  Tex. R. Civ. P. 296.  A request must
be filed within twenty days after the judgment is signed.  Id.  Rule 297
further provides that the court “shall” file its findings of fact and
conclusions of law within twenty days after a timely request is filed.  Tex. R.
Civ. P. 297.  If the court fails to file timely findings of fact and
conclusions of law, the party making the request shall, within thirty days
after filing the original request, file a notice that such findings are past
due.  Id.  Upon filing this notice, the time for the court to file
findings of fact and conclusions of law is extended to forty days from the date
the original request was filed.  Id. 

            It
is undisputed that Mark timely requested findings of fact and conclusions of
law under Rule 296 and, when the trial court failed to respond to the request,
Mark timely filed his notice of past due findings of fact and conclusions of
law.[1]  On the
face of the past-due notice, the trial judge wrote that he would not make findings
of fact and conclusions of law because he had not granted a modification of
child support.  The judge reiterated his position at the end of the hearing on
Mark’s motion for reconsideration that he was not required to file findings of
fact and conclusions of law when he did not modify child support. 

            On
appeal, Betty cites two authorities in support of the trial judge’s position.  See
In re D.S., 76 S.W.3d 512, 522 (Tex. App.—Houston [14th Dist.] 2002, no
pet.) (holding trial court was not required to make findings under Family Code
section 154.130 when it did not issue or render a new child-support order but
merely denied obligor’s motion to modify child support); Terry v. Terry,
920 S.W.2d 423, 425–26 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (holding
findings of fact and conclusions of law were not mandatory under prior version
of section 154.130 and trial court did not err by failing to file them upon
request when trial court denied motion to modify the amount of child support). 
But Betty’s reliance on these cases is misplaced, because both cases address a
trial court’s failure to file child-support findings requested under the Family
Code—not a trial court’s failure to file findings of fact and conclusions of
law under the Texas Rules of Civil Procedure.  See In re D.S., 76 S.W.3d
at 522; Terry, 920 S.W.2d at 425.[2]

            The
trial court did not grant Mark’s motion to modify child support; therefore, the
court was not required to make the specific statutory findings required under
Family Code section 154.130.  See Tex. Fam. Code § 154.130.[3]  But Mark’s
request for findings of fact and conclusions of law under Rules of Civil
Procedure 296 and 297 was directed to the trial court’s findings and
conclusions supporting its decision to deny Mark’s request to modify his
child-support obligation.  Mark timely and properly requested findings of fact
and conclusions of law under Rules 296 and 297, and under these rules the trial
court was required to file them.  See Tex. R. Civ. P. 296, 297; see
also Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989).  

            Betty
cites no authority that would preclude the trial court from making the findings
of fact and conclusions of law Mark properly and timely requested under Rules
296 and 297, and we have located none.  Further, the Family Code provides that,
“[e]xcept as otherwise provided by this title, proceedings shall be as in civil
cases generally.”  See Tex. Fam. Code § 105.003 (a); see also id.
§ 109.002(a) (“An appeal from a final order rendered in a suit . . . shall be
as in civil cases generally.”).  Our courts have recognized that “[t]he
legislature made it clear in enacting the family code that, unless expressly
provided otherwise, suits affecting the parent-child relationship are to be
governed by the same rules of procedure as those generally applied in other
civil cases.”  See In re E.A.C., 162 S.W.3d 438, 442 (Tex.
App.—Dallas 2005, no pet.); cf. Hatteberg v. Hatteberg, 933 S.W.2d 522,
528–29 (Tex. App.—Houston [1st Dist.] 1994, no writ) (holding trial court that ordered
child support and made findings of fact and conclusions of law under Rules 296
and 297 was not required to make specific findings required under Family Code
concerning child support when not timely requested and amount of child support
ordered did not vary from guidelines).  Therefore, we conclude that the trial
court erred in refusing to file Mark’s requested findings of fact and
conclusions of law.

            This
conclusion, however, does not end our analysis.  Under Texas Rule of Civil
Procedure 296, a trial court’s failure to file findings of fact and conclusions
of law is presumed reversible error, unless the record affirmatively shows that
the requesting party was not harmed by their absence.  Tenery v. Tenery,
932 S.W.2d 29, 30 (Tex. 1996); Alsenz v. Alsenz, 101 S.W.3d 648, 652 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied).  Error is harmful if it prevents
an appellant from properly presenting a case to the appellate court.  Tenery,
932 S.W.2d at 30; Alsenz, 101 S.W.3d at 652.

            Mark
contends that his ability to present his case is clearly harmed by requiring
him to guess at the reasons for the trial court’s decision.  Specifically, he
claims he is left to guess (1) what the trial court found in terms of a change,
or lack thereof, in earnings and income; (2) what the trial court found in
terms of a change, or lack thereof, in the parties’ circumstances, (3) whether
the court based its decision on a finding that Mark was intentionally
underemployed, and (4) alternatively, whether the court did not find that there
had actually been a decrease in Mark’s income.  

            We
conclude, however, that this record affirmatively shows that Mark was not
harmed.  The trial court’s order denying Mark’s petition reflects that the
court expressly found “there is no material or substantial change of circumstances
of the children or a person affected by the order to be modified since the date
of the rendition of that order.”  Further, the evidence presented at trial was
neither lengthy nor complicated, and the record reflects that Mark claimed his
child-support obligation should be reduced because his income had decreased
substantially since he moved to Houston and he was not voluntarily
underemployed.  Thus, the trial court’s finding could have rested on either a
determination that Mark’s income had not materially and substantially changed
or that Mark was intentionally underemployed.  Further, Mark was able to brief
all of the relevant issues and does not identify any issue that he was unable
to brief as a result of the trial court’s failure to make findings of fact and
conclusions of law.  See Alsenz, 101 S.W.3d at 652 (holding appellant
was not harmed by trial court’s failure to make findings of fact and
conclusions of law when the evidence and issues raised at trial were clearly
reflected in the record and the appellant did not appear to have had any
problem presenting his case on appeal).

            We
therefore overrule Mark’s first issue.




III

A

            The
Texas Family Code provides that the trial court may modify a child-support
order if the movant shows (1) that the circumstances of a child or a person
affected by the order has materially and substantially changed since the earlier
of: (a) the date of the order’s rendition; or (b) the date the settlement
agreement on which the order is based was signed; or (2) three years have
elapsed since the order was rendered or last modified, and the child support
award differs by either twenty percent or $100 from the amount that would be
awarded in accordance with the child support guidelines.  See Tex. Fam.
Code. § 156.401; Hardin v. Hardin, 161 S.W.3d 14, 20–21 (Tex.
App.—Houston [14th Dist.] 2004), judgm’t vacated, op. not withdrawn, No.
14-03-00342-CV, 2005 WL 310076 (Tex. App.—Houston [14th Dist.] Feb. 10, 2005,
no pet.) (mem. op.).  

            The
best interest of the child is always the trial court’s primary consideration in
determining questions of child support.  See Tex. Fam. Code § 156.402; McLane
v. McLane, 263 S.W.3d 358, 362 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied).  In determining whether a modification in child-support payments is
appropriate, the trial court should examine the circumstances of the child and
parents at the time the decree was rendered, in relation to the circumstances
existing at the time modification is sought.  Holley v. Holley, 864
S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

            To
determine whether there has been material or substantial change of
circumstances warranting a modification of an existing child-support order, the
trial court may consider the child-support guidelines.  Tex. Fam. Code §
156.402(a).  The court may also consider “other relevant evidence in addition
to the factors listed in the guidelines.”  Id. § 156.402(b).  Thus, a
court’s consideration of the child-support guidelines in a modification
proceeding is discretionary, not mandatory.  See Friermood v. Friermood,
25 S.W.3d 758, 760 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  

            The
requesting party’s financial ability to pay child support does not depend
solely on current earnings, but extends to all sources that might be
available.  Clark v. Jamison, 874 S.W.2d 312, 317 (Tex. App.—Houston
[14th Dist.] 1994, no writ); McLane, 263 S.W.3d at 362; see also
Tex. Fam. Code § 154.062 (providing that in calculating net resources for
purposes of determining child-support liability, the court may look to all wage
and salary income and all other income actually being received, including gifts
and prizes).  The burden is on the requesting party to show the requisite
change in circumstances.  In re D.S., 76 S.W.3d at 520; Clark,
874 S.W.2d at 317.  

            The
trial court has broad discretion in setting and modifying child-support
payments.  See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.
1990); Anderson v. Anderson, 767 S.W.2d 163, 164 (Tex. App.—Houston
[14th Dist.] 1988, no writ).  A trial court abuses its discretion when it acts
arbitrarily, unreasonably, or without reference to any guiding rules or
principles.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241–42 (Tex. 1985); Newberry v. Bohn-Newberry, 146 S.W.3d 233, 235 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).  Under an abuse-of-discretion
standard, legal and factual sufficiency are not independent grounds of error,
but are relevant factors in assessing whether the trial court abused its
discretion.  In re T.J.L., 97 S.W.3d 257, 266 (Tex. App.—Houston [14th
Dist.] 2002, no pet.).  A trial court does not abuse its discretion when some
evidence of a substantive and probative character supports the trial court’s
order.  Newberry, 246 S.W.3d at 235.  When, as here, the trial court
does not make findings of fact and conclusions of law, we must imply all the
necessary findings to support the judgment.  Worford, 801 S.W.2d at 109.




B

            In
his remaining issues, Mark contends that the trial court abused its discretion
in denying his petition to modify because there was a material and substantial
change in his circumstances and that he was not voluntarily underemployed.  Mark
further contends that even if the trial court found he was voluntarily
underemployed and applied the child-support guidelines to his earning potential
rather than his current salary, his original child-support obligation exceeded
the Texas guideline amount based on his income at the time of the divorce.  On
this record, however, we disagree that the trial court abused its discretion.

            In
his second issue, Mark contends the evidence shows a material and substantial
change in his circumstances warranting a reduction in his child-support
obligation.  Mark points out that when he and Betty divorced in 2006, he lived
in Omaha, Nebraska, and was employed in the restaurant business earning
approximately $72,000.  Mark’s child-support obligation, based on his 2006
income, was $1,115.76 per month.  When Mark moved to Houston in April 2008,
initially he was unemployed.  Mark testified that while he was unemployed he
made monthly child-support payments by using his savings.  In June 2008, Mark
got a job as a teller at Bank of America, earning about $18,000 per year.  At
the time of trial, Mark’s salary had increased to $25,400 per year.  Mark
contends that his existing child-support obligation accounts for eighty-two
percent of his total net monthly income.

            At
trial, Betty agreed that when Mark moved to Houston he took a lower-paying job
than the one he had in Omaha.  Betty also testified that from June to October
of 2008, Mark paid less than the full amount of child support, and was in
arrears of $1,428.80.  In response, she filed a motion for enforcement, and
Mark then became current on his payments.  Mark testified that at the time he
was behind on child support, he was unable to comply with the court order and
had no property from which he could have raised the money to pay the back child
support.  He also testified his relatives refused to loan him money to pay the
arrearage.  Mark testified that eventually he paid off his child-support
arrearage with an income-tax refund.  Conversely, Betty testified that, to her
knowledge, Mark was able to make the payments during that period, and he had
assets from which he could borrow money to make the payments.  Although Betty
acknowledged she had no documents or other evidence showing the resources Mark
could have used to pay child support, she testified that Mark was “awarded the
Rumscheidt Family Trust” and he “lives behind that trust.”  Betty explained
that she believed Mark received income from the trust based on a conversation
between Mark and their oldest child.  Betty also testified that the house Mark
lives in belongs to the Rumscheidt Family Trust. 

            Mark
testified that he was able to pay his child-support obligation and the
children’s health insurance on his $25,400 salary because his parents
“subsidized [his] living.”  Even though his parents subsidized his living
expenses, Mark testified that he has no money left over at the end of the
month.  He also testified that his parents paid his attorney’s fees, although
he stated that his parents lent him the money.  Further, Mark testified that
the family trust owns the house he lives in and his parents pay all of his
utilities.  Mark denied that he received any income from the family trust, and
although he was aware of the trust, he had no knowledge about the trust
documents, had never seen any trust documents, and did not know who the trust’s
beneficiaries were.  

            On
cross-examination, Mark testified that in June 2008, when he first got behind
on his child-support payments, he owned a paid-for 1999 Dodge truck worth
$12,000.  Also in June, his parents purchased for him a 2007 Nissan automobile
for about $14,500.[4]
 Mark testified that his mother wrote a check for the automobile, but he did
not know if the money was his mother’s or the trust’s.  Also, in November 2008,
Mark’s parents or the trust paid off the balance on Mark’s credit card of
$8,241.95.  At the same time, Mark’s parents or the trust also paid a $5,000
retainer so that Mark could retain an attorney for this proceeding.  Mark also
testified that his parents or the trust have since paid about $20,000 in
attorney’s fees for him.  Mark stated that the house he lives in is valued at
about $187,500, and has a rental value of $1,634.82 per month.  He did not know
what the monthly utilities cost.  He also acknowledged the house, which his
parents purchased in 2007,[5]
is located in the Hearthstone subdivision on the seventh hole of the golf
course.  

            Thus,
in addition to his testimony concerning his salary, Mark admitted receiving substantial
financial support from his parents or the family trust, including a rent-free
home with all utilities paid, a car, and legal fees and credit card bills paid.[6]  Mark also submitted
exhibits, including an affidavit and summaries of the monthly utilities and bills
paid on his behalf, providing additional financial information.  The trial
court was entitled to consider the financial assistance Mark received from his
parents or the trust in determining Mark’s ability to pay child support.  See
Roosth v. Roosth, 889 S.W.2d 445, 453–54 (Tex. App.—Houston [14th Dist.]
1994, writ denied); Clark, 874 S.W.2d at 317; McLane, 263 S.W.3d
at 362.  When added together, Mark’s testimony concerning his salary, the financial
assistance provided by his parents or the trust, and the supporting documentary
evidence is sufficient to show an amount roughly equivalent to Mark’s salary in
2006.[7] 
The evidence also showed that Mark was current on his child-support payments at
the time of the hearing.  On this record, therefore, the trial court could have
reasonably concluded that Mark failed to meet his burden of proving a material
and substantial change in circumstances.  

            We
therefore overrule Mark’s second issue.  Having determined that the trial court
did not abuse its discretion by determining that Mark failed to demonstrate a
material and substantial change in circumstances, we need not address Mark’s
third and fourth issues relating to voluntary underemployment.

* * *

            On
Mark’s first issue, we hold that the trial court erred in failing to make
findings of fact and conclusions of law under Texas Rules of Civil Procedure
296 and 297 in response to Mark’s proper and timely request.  But, on these
facts, we also hold that Mark was not harmed by the trial court’s error.  We also
overrule Mark’s second issue and do not reach his remaining two issues.  Accordingly,
we affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Brown.

 









[1]
Mark also requested findings of fact and conclusions of law under the Family
Code, but on appeal he is not challenging the trial court’s refusal to state
findings under the Family Code.





[2]
In relevant part, Family Code section 154.130 provides that “in rendering
an order of child support” the trial court shall make specified findings if a
party timely requests them or the amount of child support ordered varies from
the amount computed by applying the statutory guidelines.  Tex. Fam. Code §
154.130(a) (emphasis added).





[3]
Under Family Code section 154.130, if findings are required, “the court shall
state whether the application of the guidelines would be unjust or
inappropriate and shall state the following in the child support order:

‘(1) the net resources of the obligor per month are
$__________;

‘(2) the net resources of the obligee per month are
$__________;

‘(3) the percentage applied to the obligor's net
resources for child support  is __________%; and     ‘(4) if
applicable, the specific reasons that the amount of child support per month
ordered by the court varies from the amount computed by applying the percentage
guidelines under Section 154.125 or 154.129, as applicable.’

Tex. Fam. Code § 154.130(b).





[4]
Mark testified that after he received the automobile he sold his truck for
“collateral on the loan I owe my parents for legal fees.”





[5]
Although Mark could not say whether his parents paid cash for the house, he
acknowledged that they own it “outright” and do not pay a mortgage.





[6]
Mark took the position at trial that the support received from his parents
should not be included in the calculation of his net resources, but he provided
alternate options for monthly child-support payments he was willing to make
that took into account some of the support provided by his parents or the
family trust.  





[7]
The court was not required to believe Mark’s testimony that he received no
income from the trust, given that he also testified that he had no knowledge of
the trust’s details.  See Hardin, 161 S.W.3d at 23.  The court likewise
may have disbelieved Mark’s testimony that his parents lent him the money to
pay his attorney’s fees.